Good morning again, Judges Biden, Toshima, and Fisher, and may it please the Court. Earlier, I did not feel there was time. I'd like just to introduce the Court. With me today are my colleague Iris Thornton, who also represents Mineral County and the Walker Lake Working Group, and three members of the Walker Lake Working Group have come down from Hawthorne, Nevada, Glenn and Marlene Bunch and Toby Montoya, and also the District Attorney from Mineral County, Sean Rowe, has driven down as well. So I just wanted to acknowledge their presence here. Now, Your Honors, it's my intention to reserve five minutes of my 20 minutes for rebuttal, so I will strive to wrap up within 15 minutes. And although the lake question that was addressed in the last oral argument is also applicable to this case, unless you have questions to follow up on it, my intention is to focus on the other issues in the public trust case and the appeal from Judge Jones' order dismissing that claim. I will start by addressing the question of standing and then move on to more of the substantive questions relating to the doctrine itself and its application. Let me first start by saying that, as you know, our position is that Judge Jones erroneously ruled that the county does not have standing to prosecute its public trust claim because he did not acknowledge that the county filed its claim and continued to assert during the duration of the case its interests in its own right as a county, as a quasi-corporate local governmental entity in Nevada, and not just those of its residents in a sort of parens patriae capacity. It is true that the county, in its original pleadings and at different points after that, addressed the fact that its interests overlapped with the interests of residents of Mineral County and the broader public, but that does not change the fact that the county was suing in protection or defense of its own interests in the economic, aesthetic, demographic well-being of the county as such, and not just an individual's experience of the lake or ability to use it. Now, in addition, I think because Judge Jones focused so much on a parents patriae limitation that wasn't actually, didn't fit the case essentially, he didn't address the county's injury in fact, but I think it's clear from both the allegations in the pleadings and in the affidavits that were submitted back in the 90s by both county officials and other people who had firsthand knowledge of what had happened to the county on a number of different levels that there can't be a serious dispute that there are at least alleged, but probably indisputable, types of injury that Mineral County as a county has suffered as well as its residents as a result of Walker Lake's devastation over the years as it has been deprived of adequate inflows to maintain even a minimal level of health as a lake and a fishery and a migratory bird stopover or sanctuary. In addition, there is the question of whether or not Nevada law grants the power to the county to prosecute a lawsuit to protect its interests such as those involved in this case, and as we've laid out in the brief and I will just quickly acknowledge and then address if you want to, it seems clear to us that had the court bothered to get to that stage of the analysis, it would have seen that one, there are many different sources of authority and obligation on the part of the county to protect its interests and those of its residents as they relate to water resources, as they relate to natural resources and other aspects of the general welfare, which are directly consonant with those injuries and interests that are at the core of this public trust case for Mineral County. So it doesn't seem to us that you could look at Nevada statutory law and doubt that a county would be an appropriate party to bring a claim before a court of competent jurisdiction. I think there was some briefing and debate about something called Dillon's Rule. I think we've addressed that adequately in the briefs, but let me just point out that a county bringing a claim to an authority, whether it be a different governmental entity at a higher level of government or a court of competent jurisdiction, to try and seek enforcement or recognition and enforcement of a duty like the public trust duty, is not the same as the county exercising either legislative or executive authority to itself regulate or itself presume to enforce that broader duty or obligation. So it is not really properly embraced or covered by Dillon's Rule at all. And as we've pointed out, that rule has anyhow been modified in Nevada, as in many other states, to replace the old presumption with a presumption that a county would have an implicit power to follow through on various other obligations or duties it has in the absence of clear express intent to prevent it from doing so. And there's no such clear express prohibition or proscription of any sort in Nevada law. And then, of course, the Nevada Supreme Court in two cases that dealt directly with county interests and interference, you could say with water rights allocation decisions by the state or the state engineer, the Red Rock Valley Ranch case and the Serpa case, both of which involved Washoe County asserting its interests and in effect defeating or contradicting decisions that had been made by the state engineer. In both of those cases, the Nevada Supreme Court rather clearly ran through an explanation and an examination of how substantial a county's interest in and rights to exercise and defend its interests in matters of water rights management and water resource management in Nevada are. Let's assume you have standing. Why don't you address the public trust doctrine? That seems to be the major issue. Yes. Certainly a major issue. Well, we, yes. Judge Fischer, I'll turn to the public trust doctrine and substantive aspects of it that are in dispute here. We did not expect a ruling on standing. There was no briefing on it at the time, and it appeared to have been accepted in the past. With regard to the public trust doctrine, our position is that it is not a question that is seriously in dispute under Nevada law. The public trust doctrine is a part of Nevada's law and a part of Nevada's water law. It seems clear that if you look back at even the older 19th century cases and then as we've cited some cases through different parts of the 20th century, that there was never any doubt that like other Western states or most Western states, Nevada recognized that the ownership of the water lies in the public and that there's a usufructory right to water use that exists prior to the water code and now under the existing statutory system for beneficial use, for appropriative rights, as in most of the West. And certainly our position is that between Justice Rose's concurrence in the Mineral County case in 2001 and the unanimous en banc decision that Justice Saita authored in the Lawrence v. Clark County case in 2011, that any debate about whether or not the public trust doctrine exists and applies as a part, an inherent part, of Nevada's water law has been laid to rest and that therefore this court could go ahead and rule on that. And in fact, I think that our position is Judge Jones clearly got it wrong and it seems as though he worked hard to find a narrow way of trying to construe this case law, such as to say two fundamental things. One is that the public trust doctrine, if it existed, could only apply prospectively and could not have any role in regulating or limiting existing water rights. Who introduced this? Who introduced the public trust concept or doctrine into this case? Well, we brought the claim, Your Honor. It was before my time. And your claim is what? Our claim is that the public trust doctrine Dependent on the public trust doctrine. Is there a certain interpretation of it? Is that right? Yes. Yes, Judge Toshima. Our claim is that the public trust doctrine imposes an obligation on the decree court because it functions in the place of the two sovereign states in which the Walker River Basin lies, Nevada for the majority of the system and especially for Walker Lake but also for California, and that it would apply to the states as well were this not an interstate stream that was subject to the exclusive jurisdiction of the decree court. So our claim is that the public trust obligation requires that the system be managed and appropriative water rights in the system be limited or managed again or administered in such a way as to ensure that at least minimal levels of inflow over time, this does not necessarily mean one hard number every year since systems fluctuate greatly, but that over time adequate water would continue to make it into Walker Lake to maintain it at a base level of ecological and recreational and economical, as a result, health. Is this something to be managed by the Nevada legislature or is it something to be managed by the courts? Well, this is a trust obligation that is meant that is properly for the courts to interpret and to determine the applicability of and the scope of at least in terms of And so would it fall to either a U.S. district judge or to a state district judge to decide how much water has to go into Walker Lake? Yes, Judge Bybee, I believe that is appropriate. And what standards would we use? Well, that would be a matter of fact finding for the court, but there is essentially uniform agreement about a range of water flows into the lake and water quality and water levels of the lake that correspond to a moderate, acceptable level of the Lahontan cutthroat trout fishery and therefore its utility as well for migratory birds and other purposes. That amount is there. Now, it would not be difficult for a court such as the district court to get to the point of taking evidence on what the state of the lake is now, what it has been historically, and what that level is that corresponds to what both the Nevada Department of Wildlife and the United States Fish and Wildlife Service and other entities have determined is essentially a good benchmark. Does your understanding of the public trust doctrine require that Nevada maintain the lake at some historic level? And what do we take? Do we take 1864? Do we take 1861? Do we take 1936? I'm picking dates that are sort of roughly in my mind that have some correspondence to when Nevada became a state, when the decree went into effect. How do we fix the level of the lake? Well, Judge Bybee, I think that is a very sound question, and there is, of course, a decision that needs to be made and choices that will need to be made. We've taken the position that the lake does not need to be returned to and it's not reasonable to try and return it to a pre-development stage, meaning before any water appropriations and diversions occurred, say, in the 1860s. That is a very, very high level of the lake. However, returning the lake to a level at which it seemed to have the traditional functions for which it was renowned, namely as having a thriving fishery and also being a major and important migratory bird stopover, and as a result supporting things like a traditional loon festival, fishing derbies, and a variety of recreational and economic activities dependent on the lake. But how do we decide as a court? You're asking us to decide what the public trust doctrine would mean and then send it back and have the district court apply that. But how would we choose the level? Do we choose a date? I think a date could be used. Your response to my question was perfectly reasonable, but it was extraordinarily abstract. And if we send this back to a district judge and decide to decide it on our own as opposed to, let's say, referring it to the Nevada Supreme Court for decision, then it seems to me that either we have to make up some benchmarks or the district court has to make up some benchmarks, and I don't know what the standards are for deciding what those benchmarks are. I get the public trust doctrine, but that's a very, very amorphous standard, and it seems to me that maybe the legislature might have something to say about that. And if not, I don't know where we start. How about certifying it to the Nevada Supreme Court? Well, Judge Fischer, I think it certainly would be appropriate, and it is one alternative for this court to certify the question to the Nevada Supreme Court. It seems to be what was proposed when the state mandamus case was presented at the beginning of the millennium and what the court seemed in its opinion in 2001 to anticipate. It's not necessary in our view because we feel that the doctrine is clear in the law. However, it would be appropriate, and as Justice Bybee has, I'm sorry, Judge Bybee, has pointed out, there is a question, a fact-specific determination that will need to be made about what is an appropriate standard for the public trust doctrine. Well, there's an antecedent question, isn't there, as to whether the public trust doctrine, how it interacts with previously adjudicated rights that are set forth in a decree? Well, in our view, the law pretty clearly answers that question, Judge Fischer, in the following way, that the public trust doctrine adheres in all of the appropriate water rights that have ever been acquired or allocated in Nevada, and that, therefore, Well, Judge Jones' view was that to apply it to this decree would, in effect, be a retroactive application of the doctrine, right? That's his view. Well, Judge Tshishima, I think I'm not sure exactly what his view is, but that is essentially correct. He was worried about somehow improperly taking a novel doctrine or concept and applying it retroactively, and as we've explained, we think that's fundamentally wrong. The public trust doctrine is quite old and quite ingrained in the law, and it's our view that it was ingrained. But it's never at least overtly been taken into account, say, for instance, in any decision the state engineer ever made, right? That's right. It's been systematically failed. The state engineer's office has systematically failed to acknowledge it and address it as a component of Nevada water law. It's more recently, in response to this lawsuit, the state engineer's office has taken the position, or I should say the state of Nevada because I think it's the Department of Wildlife. You think it's part of the state engineer's obligation when making decisions, well, not only this decree, you know, but all the other decrees that the state engineer administers to take the public trust doctrine's demands into account? Yes, Judge Tashima. I think it's an obligation that applies to the sovereign completely so that a branch of the sovereign, such as the state engineer's office, as an agency of the state, is bound by it and is obliged to. So, for instance, in this case, then, would it be proper for us to affirm the, I'll call it the, it was not a reversal, but, you know, the disregard of the state engineer's order by the district court because on a different ground, the state engineer never considered the requirements of the public trust doctrine? Are you talking about the last case that was heard by this panel this morning? Well, maybe I am. Maybe I am. Well, it wasn't raised. We're taking a holistic approach to these cases today. Yes, yes, yes, yes. I believe that that's appropriate, Your Honors. My time is below what I wanted to reserve for. I'll allow you time to answer the question. You'll get your full time. But, Judge Tashima, I would say that that issue was not raised in relation to the change application that the National Fish and Wildlife Foundation applied or in the stored water lease program, but I think, and it does in some ways relate to the practical or pragmatic question you raised, Judge Bybee, that the fact that the Walker River Restoration Program was enacted and funded largely to address this same fundamental problem with Walker Lake and to try and provide one part, at least, of a solution or an answer to what the lake requires to comply with the public trust obligation and just in general to make the lake sound in some level, reasonable level, that it is a part of that process. No one challenged it on this ground, so I would argue that it was binding upon the state engineer, but I couldn't offer you all an opinion about whether there was a deficiency on that particular decision in relation to those applications. I think probably not, but that's a bit of a hypothetical. Thank you. Mr. Herskovitz, before you sit down, I meant to ask this in the last case, and I am going to ask this of all counsel who follow in this case and the next one. You represent the working group in two cases, and you were appellee on one side and appellant in the other. In the next case, the government has requested that the district judge, that this case be reassigned, and I assume that a reassignment would affect all three cases. What's the position of your client on the reassignment of the judge? Well, Your Honor, I think that if one part of the case is reassigned, all of it needs to be reassigned because these are really inseparable elements of one case. Up, down, are you asking for a reassignment of the judge? It pains me to say yes, Your Honor, Judge Bybee. I have the greatest respect and reverence for the judges and the courts and the Federal Judiciary, but I think as our briefs reflect, we feel like there has been a certain amount of cavalier disregard, both for the facts and the record in the case, and for the idea or the principle that there should be a serious and impartial approach to this very important question. So we would be in favor of it. And I do – I am sorry to say that as a former clerk for a district judge. All right. Thank you very much. Mr. Topoli. Gordon Topoli on behalf of the Walker River Irrigation District. I have 10 minutes to address standing. Mr. Walston has 6 minutes to address finality of court decrees and takings issues, and Mr. Stockson has 4 minutes to address the public trust doctrine. I want to address redressability, and the reason I want to address it relates to whose decision this is because I think it's an important decision for the Nevada legislature rather than all of the courts. Mineral County's argument assumes that the only thing left to do here after the Lawrence case, which says we're adopting the public trust doctrine, is for the district court to simply reallocate these vested water rights, or as they say in reply, impose a drought on the entire Walker River system. But that's not what any public trust case in anywhere in the United States has held. Even Audubon, the court said we do not require any particular allocation. There is no case that requires the public trust doctrine to be used in the way Mineral County proposes to use it here. Lawrence v. Clark County simply said we are adopting the public trust doctrine. The trust resource at issue here is the private use of water, as provided for in the Nevada's comprehensive water legislation. There is nothing in that law which requires vested water rights to be reallocated from time to time to meet other trust resources as they may evolve. As a matter of fact, the Nevada law specifically provides that court decrees can only be modified for limited purposes and then only within three years of when they have been decided. Isn't that a question we should put to the Nevada Supreme Court? They've adopted the authority, I'm sorry, the public trust doctrine as a matter of principle, but have not offered any explanation for what the contours might be in Nevada and whether Nevada's contours might be as aggressive as California's or might be more aggressive than California's. I think the Nevada Supreme Court has indicated how it would judge whether or not the Nevada water law violates the public trust doctrine for not including a provision allowing for the reallocation of vested water rights. What do you think the Nevada Supreme Court has said? What it has said, Your Honor, is that it would be that, excuse me, I need to get to that part. What it has said is that it would look at whether the dispensation. What are you citing? Pardon? What are you citing? I'm going to be citing. You're attempting to cite. Are you looking at Lawrence? Yes. I'm going to be looking at Lawrence and what the court says there. It will review dispensations of public trust property to determine whether the dispensation is in the public interest, whether the state has received adequate consideration for the dispensation. And there is a third one that I'm not finding right off the top of my head here. But and whether dispensation satisfies the state's special obligation to maintain the trust for the use and enjoyment of present and future generations. What page are you looking at in the opinion? That's in Lawrence at 254 Pacific 3rd at 616, Your Honor. And just to jump directly why I think and in Lawrence, the court says that legislative action will be looked at with deference in two other Nevada Supreme Court cases. The court has said that water law policy is a matter for the Nevada legislature to decide. That's in the in Ray Filippini case. And in which is at two or two Pacific second five thirty five. And Pyramid Lake Pipe tried the Washoe County nine eighteen Pacific second six ninety seven. And let me just tell you the things that I think the Nevada legislature would take into account when deciding whether vested water rights should be reallocated to meet public trust needs or not. And keep in mind that the Nevada legislature would be acting on a law that applies statewide, not just to this particular set of facts. The court's going to want to know what are the impacts of this kind of legislation on the people who hold these water rights? What's the impacts on the economies where those water rights are used? What are the impacts on other trust resources within that area? Like here, the Mason Valley Wildlife Area. Are there any other programs that are meeting this public trust resource need that don't require us to reallocate vested water rights like the Walker Basin Restoration Program? Is this resource actually owned by the state? As we know from the tribes brief, that may not be the case here. Tribes amicus brief, that may not be the case here. How does this doctrine play out on an interstate stream system where we've got water rights in two states and we've got federal water rights under an implied reserved water right doctrine? Those are just some of the things that I think a Nevada legislature would look at and would have broad discretion in which to make a decision on and would not necessarily say in every case we are going to require reallocation of vested water rights or impose a drought on the system. We're not going to tell someone who has discretion here to do that. Quickly, I want to just address the issue of reference to the Nevada Supreme Court, potentially. What I would say with respect to that is we clearly do not have any authority in Nevada, even after Lawrence, that says the public trust doctrine requires a reallocation of vested water rights to meet resource needs. That is a question of enormous import to the state of Nevada. Not only in this case, it affects those who rely on the Truckee River, the Carson River, the Humboldt River. It affects those who rely on the Colorado River in importing significant quantities of groundwater from southeastern Nevada to meet their needs. If the public trust doctrine, if Nevada decided that the public trust doctrine did require reallocation, would that raise questions under the takings clause? I think it would, Your Honor. It would raise questions, particularly in how that regulation would be applied. If it's applied as pled in the case, which as Mineral County pleaded in the amended complaint, I mean, there would be numerous water rights that would simply no longer be able to be exercised. And in some years, they couldn't be exercised at all. But according to Lawrence, right, the Supreme Court traced the doctrine way back to the start of the state, to the Constitution. So that existed, you know, ever since then, at least. So isn't that something any use of Truckee right would be subject to? I think it would depend on the reasonableness of how the regulation is applied, Your Honor. I understand the idea that it's been here forever and everybody should have known about it. But as a practical matter, that's not necessarily how it's viewed. But I understand that. But it would still, I think, come down to a federal question of is it, does this essentially take the entire economic benefit from the water right? In terms of reference to the court or getting a decision from the Nevada Supreme Court at some point in time, the facts need to be developed somewhere, somehow. All we have here are pleadings. The so-called facts in our briefs are not from a trial court record. They're from reports. How would we even know what facts to develop if we don't know what the standard is? Well, and I think that the court, before it adopts a standard or before it tells the legislature to adopt a standard, it needs to have some facts. I think it has to have the same kind of facts. But we could assume the facts that are pled in the complaint, right? But I don't think that's an appropriate question for the Nevada Supreme Court to decide if there have been no facts developed whatsoever. Right. But we do this all the time. It happens all the time in federal court. We assume the facts as pled in the complaint and then ask whether it states a cause of action. That's a straight 12 v. 6. Yeah, I understand that. But I'm not sure that that's the case. And then once you decide whether or not a cause of action exists, the plaintiff then gets an opportunity to show that those facts, in fact, are true. But I don't think that's the issue. I think the issue is not whether there's a cause of action. The issue is what should the relief be if there's a cause of action, and what does that mean to Nevada's water law if we adopt and tell the legislature to adopt a rule that vested water rights need to be reallocated to satisfy trust needs. I think those facts need to be the court needs to understand what it means. And my time is up. Okay. I'm sorry. What's the position of the district on reassignment? Your Honor, we have not taken a position on that. I agree with the concept that if the case is reassigned, they all need to go to the same judge. The one thing that I would say, I have been with these cases from the beginning. And when we lost Judge Reed, it became very difficult for someone new to step in and pick up sort of where he left off. And that's going to be difficult here. And you might think about that. But we don't have a position. Okay. Thank you. Good afternoon, or good morning, Your Honor. My name is Roderick Walson. I represent Lyon County and also certain water users in California and Nevada in these cases. Turning just very briefly to the reference question that was just posed by Judge Bybee, we have no particular objection to a reference back to the Nevada Supreme Court to determine what law applies, assuming the correctness of the facts as put in Monroe County's complaint. But we don't think that a reference is particularly necessary because, in our view, the issues in this case are very straightforward and can be resolved by this court without reference. Very simply, Monroe County is attempting to apply the public trust doctrine in a way that no court of this nation, either the California Supreme Court nor any other court, has ever applied the doctrine. They're taking the doctrine far beyond its legitimate bounds. With reference to Judge Bybee's question about the distinction between legislative action and the action of the courts, many courts have held that the legislatures have broad power to allocate resources and protect public trust uses, and there's no question that the legislatures have that power. And to the extent that that power emanates from the public trust doctrine, then the doctrine would seem to apply. Now, no legislature, to our knowledge, has ever reallocated decreed water rights and taken those rights away and reduced the flow of water necessary to satisfy those rights, at least without paying compensation. And so our view would be the legislature may have that power, the Nevada legislature may have that power, but it would have to pay compensation to the holders of the water rights if it did so. But that's not the issue in this case, because Mineral County does not take the argument, is not making the argument that the legislature has the power to reallocate these adjudicated water rights. Rather, Mineral County's argument is that the courts have this power, not the legislature. The courts have this power to step in and apply what Judge Bybee referred to as the amorphous principles of the public trust doctrine and hold that those principles require a reallocation of water rights that were adjudicated by the court in the Walker River Decree back in 1936. No court has ever held that. The Supreme Court in Illinois Central, which is a seminal public trust case in this nation, applied the public trust doctrine to uphold the right of the Illinois legislature to reallocate its fee grant of lands underlying Lake Michigan. But in that case, the Supreme Court was upholding the power of the legislature. Here, Mineral County is arguing that the courts have this power to step in and do what the legislature has not done to date. Isn't that, in fact, and I think you know more about this, way more than I do, but isn't that, in fact, the public trust doctrine in California, that it's really the courts that administer it and make decrees taking that into account and so forth? Isn't that the way the California law has developed since National and Audubon? The California Supreme Court in 1983 in a case entitled National Audubon Society v. Superior Court held that the public trust doctrine does apply in California and that the doctrine requires the state legislative bodies to consider public trust uses. But it specifically held that it's up to the legislature and the state's administrative body to determine whether to protect public trust uses or not. And it said specifically that if the legislature or the State Water Resources Control Board decide that consumptive uses of water are better served than the preservation of public trust uses, then the legislature and the state's administrative body have the authority to reorder those uses. But that's not Mineral County's argument here. Mineral County's argument is not based on what the legislature has done. It's not based on what any state administrative body has done. It is asking you, the judges, to step in and act as legislatures by basically reordering the water rights that were established and adjudicated almost 80 years ago in the Walker River Decree. The Supreme Court has held in numerous cases that general principles of finality and repose apply to water rights decrees. And it upheld that principle in the Arizona v. California case, and then three months later in the Nevada v. United States case. These principles of finality and repose that apply to water rights, in our opinion, preclude the public trust doctrine from being construed as a basis for modifying the Walker River Decree and reallocating the adjudicated water rights. And finally, in answer to the question that Judge Ivey posed about the takings issue, our view is that if Mineral County's argument is correct, then that would result in an unconstitutional taking of water rights under both the Nevada Constitution and the United States Constitution. The Nevada Supreme Court has held... It's not unconstitutional until the state declines to pay just compensation, if you're correct. It doesn't prohibit the taking. It only requires the payment of just compensation. That is correct. We've also made, however, the argument, Judge Ivey, that Mineral County's argument would not only violate the takings clause, but it would also violate the due process clause, because it would result in a sudden and unpredictable change in water rights. And the remedy for violation of the due process clause is not simply payment of compensation, but rather invalidation of the legislative act that caused the violation of the due process. Thank you. Thank you. May it please the Court. Brian Stockton representing the Nevada Department of Wildlife. I think most of my public trust arguments have already been made, but our position is clearly that Judge Jones was correct, that this is a political question that the legislature needs to determine. The legislature established what I consider a pretty sophisticated and complicated water law, system of allocating water rights in Nevada. And in that, the assertion is that the state engineer never takes into account the public trust, but that's not true, because under every decision by statute that the state engineer makes, he has to consider whether the new appropriation or the change is in the public interest. And the public trust is just one subset of that. Now, the legislature has determined that the balance should be in favor of appropriation for rights. They wanted to make the desert bloom so that people could live in Nevada and build the economy of Nevada. And there's just no doubt Walker Lake has suffered, but it's our position that this is a political question that is bolstered by the previous case you heard, where the Congress has allocated a large sum of money to be able to purchase water rights from agriculture interests and transfer them to the lake. And so that's a strong statement of legislative intent that that's the proper way to do it, not just reallocating the water and providing the super water right to Walker Lake. Nevada has maintained its public trust over the water through various mechanisms. We don't allow waste. You can only use water for beneficial purposes. When the need for the water is not there, you can't use the water. And those kinds of factors protect the public interest in the water. And so it's our position that referral to the Nevada Supreme Court would not be appropriate, because this is a legislative question to rebalance those factors if they decide that the public trust factors in Walker Lake are more important than those. I mean, we talked about the in-stream values, the wildlife habitat upstream, and the Mason Valley Wildlife Management Area. Those are all also public trust values that need to be balanced. It's not just the Walker Lake that has a public trust interest. So just real quickly, I'd like to just talk about a couple of things from the National or one from the National Audubon Society where they talked about in that case that the courts or the water court in that case was going to have to balance the values that were found in Mono Lake in breeding the birds on the island versus the substantial and real need of the people in Los Angeles for that water just to live. And so that's the kind of balancing that needs to be done. And finally, in the Lawrence case at page 617, they say, Finally, we note that when the legislature has found that a given dispensation is in the public interest, it will be to court a deference. In this case, the legislature has declared that all water is available for appropriation. I see that I'm out of time. We did oppose replacing Judge Jones just on the basis that he's very passionate about this case. The day I was assigned to this case, he was on a tour in a van with the federal water master and Ms. Peterson. They drove from the Walker Lake all the way up to Twin Lakes and Bridgeport. He viewed the system. He's very passionate about it. He's very involved in it. And I know some parties see that passion as overzealous, but we oppose replacing Judge Jones. Thank you. Thank you. May it please the court. I will try to quickly respond to a few of the points that have been made by opposing counsel. There are also some points that we did not get to. I doubt we have time to get them all. So please, if you have questions that you would like me to focus on, feel free to lead with them. But I will just say that I think that it's a red herring for the court to be encouraged to view this as a purely political question that is non-justiciable. Courts routinely interpret and pass judgment on whether or not a fiduciary obligation exists and is enforceable. There may be questions as to implementation or how to fulfill the obligation or trust duty that the state legislature or that a specific trial court, a fact-finding court, would then have to receive evidence on and balance. But just as in the Mono Lake case and as in subsequent California cases and as in the Waiholi Ditch case in Hawaii and its progeny, courts will look at both existing rights and rule that they must be reduced or constrained in recognition of the public trust doctrine as a limitation on the right that was granted in the past. So it's simply not true that this is either beyond the competency of a court or that it is not done, at least in California and Hawaii. And it does appear from both Justice Rose's concurrence, but then in the opinion in Lawrence, that Nevada, as it often does, is looking to California law as a likely model to follow. But I do think certifying to the Supreme Court would resolve that question. You've appeared in both cases that we've heard today. Yes. So if your theory is correct on the public trust doctrine, doesn't that mean that although Congress went about acquiring rights in the prior case from senior appropriators by buying them out, that that wasn't necessary? I mean, maybe it was necessary for Congress, but it wouldn't have been necessary for Nevada. Couldn't Nevada just simply have gone to these senior appropriators and said, we need your water? You took the rights. You've had the rights for a long time, but you took it subject to the public trust doctrine, and now we need your water to go straight to Pyramid Lake. Wouldn't that have been a more efficient way to accomplish that? It would save the United States a lot of money. Let me answer that question in two parts. One is, yes, at least hypothetically, the doctrine is fairly straightforward, and it would be arguably possible for the Nevada Supreme Court or the district court, if it felt the law was clear, to simply enforce the trust obligation. It would not eliminate any water right per se. It would be a constraint analogous to existing natural constraints or minimal requirements for the system. However, it has never been Mineral County's position that that needs to be the result or the remedy here. I think there is room for a variety of remedies, and one of them may be establishing a standard or establishing the criteria that must be taken into account and allowing for, whether it's the state legislature or Congress or a combination, for them to address how most equitably and practicably to solve the problem that nobody denies. But under the public trust doctrine, a court, either a Nevada court or a federal district court, could have declared a need for the water from the senior appropriators from which the foundation purchased the rights and said, we're not going to pay you, and we just need the water, and we're going to ship it down to Walker Lake. Well, I don't want to get into what the question of the potential breach of contract or purchase would be, but hypothetically, a court could have decided that public trust obligation required that minimal flows or whatever level of flows be provided to Walker Lake and that that system be administered in such a way, and that amount of water on average or over time be made unavailable, I guess you could say, that the right of people to divert water be adjusted so as to ensure that those flows may be. Is the water the foundation purchased? I know I'm hearkening back to the last case, but I think it relates to your case. Is the water that the foundation purchased in the prior case, is that water now flowing into the lake, or has it been enjoined? Nothing has happened with those purchases yet. Until the decree is – until the judge approves it. That's right, unless the decree is modified and those programs are changed. If the foundation gets that water, does that solve Mineral County's problem? Not completely, Your Honor, and it's not a guarantee because it has – the program has not been implemented fully. It's not clear that the amount of money that was allocated will completely meet the needs of the lake. And when I say complete, I don't mean back to pre-development. I mean a level that scientists and a variety of different governmental entities have weighed in on as saying that is a reasonable benchmark of where the lake could and should end up. So Congress has clearly addressed this to some degree, but it has not resolved the question of whether or not there's a legal obligation to solve the problem with the lake and to meet some kind of standard of restoration or maintenance of that lake's functionality. And that would then – I think the court, ultimately the decree court, would take the standard as it's either articulated by this court or the Nevada State Supreme Court, or if the decree court had itself gone through the entire process of examining the evidence and considering the law, it could have established the standards. Then it could take a look at what the goal for the lake ought to be, consistent with the public trust. But if the court were to order reductions, it doesn't have to compensate the water owners. Well, that is a hypothetical that we think is premature to address because clearly there are limits on usufructory water rights, and both Nevada and California and sister states' courts have long held that some level of reasonable regulation or restraint by the state would always be a possibility and would not necessarily require compensation. On the other hand, we've never disputed that there's some property right in the use of water. And if a remedy required that on a practical level flows in the river to the lake resulted in some kind of significant loss, economic loss, to water rights users, we have not taken a position that that would not be compensable. That would be a part of the remedy that could be ordered. And that, as opposed to the entire question, would be a remedy where the sovereign governments, whether we're calling it Nevada alone or Nevada and California or the United States court involved somehow, I'm not sure that's really true, but it sits in their position, would then decide does the remedy require some sort of directive to state legislatures or to the executive branches of those sovereign governments, and then they would have to resolve the question of what's required and whether or not to compensate. But if the court found that there was a compensable taking, we have not said that that is not a possibility. I just think it's really far too premature in this particular case to determine whether or not enforcement or recognition of the public trust doctrine would in fact result in any kind of taking that would be compensable. And I think that's a very fact-specific inquiry, Your Honor. Okay. Thank you, Mr. Erskine. Thank you.
judges: Tashima, Fisher, Bybee